## BOWERS v. CARTER.

No. 3661.   Decided December 22, 1921.   (202, Pac. 1093.)

1.   SEDUCTION—COMPLAINT CHARGING ULTIMATE FACTS HELD SUFFICIENT.   In action for seduction under Comp. Laws 1917, § 6502, complaint alleging that defendant on a certain date and on divers times thereafter in a named county, "by taking advantage of plaintiff's youth and ignorance and by means of artifices, persuasion, deception and force, wickedly seduced, debauched and carnally knew plaintiff," whereby plaintiff became pregnant and gave birth to a child on a certain date, was not demurrable for uncertainty, as the ultimate facts were pleaded and it was not necessary to describe the "artifices, persuasion and deception" employed.[1]

2.   SEDUCTION—EVIDENCE HELD INSUFFICIENT—"SEDUCED."   In ac-

tion for seduction under Comp. Laws 1917, § 6502, where no testimony was offered by defendant, plaintiff's uncontradicted evidence showing illicit intercourse but no reliance upon promise of marriage or other statements of defendant, *held* not to show that plaintiff was "seduced" (citing Words and Phrases, First and Second Series, Seduce).[1]

Appeal from District Court, Fifth District, Juab County; *D. H. Morris*, Judge.

Action by Gladys Bowers against J. H. Carter. From judgment for plaintiff, defendant appeals.

REVERSED, and new trial granted.

*M. M. Warner* and *Thomas Ivins*, both of Salt Lake City, for appellant.

*J. H. McKnight* and *P. N. Anderson*, both of Nephi, for respondents.

WEBER, J.

Plaintiff brought this suit against defendant for damages because of her seduction by him, and obtained judgment from which defendant appeals.

The action was brought under Comp. Laws Utah, 1917, § 6502, which provides that an unmarried female under 20 years of age at the time of her seduction may prosecute as plaintiff an action therefor and may recover therein such damages, pecuniary or exemplary, as are assessed in her favor.

The complaint charges that the defendant "on the 12th day of May, 1918, and on diverse times thereafter, in Juab county, Utah, by taking advantage of plaintiff's youth and ignorance and by means of artifices, persuasions, deception and force, wickedly seduced, debauched and carnally knew

---

[1] *Peterson* v. *Crosier*, 29 Utah, 235, 81 Pac. 860.

plaintiff,'' whereby plaintiff became pregnant and gave birth to a child on February 11, 1919.

The appellant demurred to the complaint on the ground of uncertainty. The overruling of the demurrer by the court is one of the alleged errors assigned. The ultimate facts are pleaded in the complaint, and it is not subject to the objection that it is uncertain or ambiguous. In order to charge appellant with seduction of respondent, it was not necessary to describe the "artifices, persuasion and deception" to which appellant may have resorted in order to accomplish his purpose. *Peterson* v. *Crosier*, 29 Utah, 235, 81 Pac. 860.

Fault is found by appellant's counsel with some of the court's instructions to the jury, but a careful examination of the charge has convinced us that it is without reversible error.

The principal question for determination in this case is whether any substantial evidence was produced to support the jury's verdict. It is undisputed that the plaintiff and defendant had sexual intercourse with each other and that a child was born as a result. It is undisputed that plaintiff at the time of her alleged seduction was under 20 years of age; that she was unmarried and prior thereto had been chaste and virtuous. No testimony was offered on behalf of appellant, and the evidence adduced by respondent is uncontradicted.

The evidence relating to the behavior of appellant and respondent prior to the first act of sexual intercourse between the parties was thus described by respondent when testifying:

"I am acquainted with Harry Carter, defendant, and also with his father and mother. My father * * * and my mother * * * also reside in Nephi. I went to work for J. H. Carter's father and mother as a domestic in the fall of 1917. In about the month of September, J. H. Carter, the defendant, lived there most of the time. He attempted to put his arms around me and said if I was old enough he would marry me, and I slapped him in the face and said, 'Get out of here!' and immediately his mother came in and wanted to know what I was doing. 'Are you, flirting with my son? she said. I said, 'No, I am not.'"

According to the bill of exceptions, in which the testimony

is set out in narrative form, the next incident occurring is described by respondent as follows:

"About May, 1918, I was cleaning the bedroom, and he came in for some paper. As I went to go out, he grabbed me around my arms and tripped me over on the floor. I tried to get away, slapped him, kicked him, pulled his hands away, and I couldn't get away. When he got through (intercourse), he said, 'If you dare tell, you won't tell a second time.'"

Respondent further testified:

"Another time we was locked in the hall upstairs, and his mother came, and I told her Harry locked me in, and I told her what Harry done to me, and she said, 'If you will stay here, I'll see that nothing happens to you.'"

Two other acts of sexual intercourse were testified to by respondent.

On cross-examination she said that she did not want to marry him, "and the fact that marriage was talked of when I was with him did not make me surrender my person to him at all. It had nothing to do with it at all." On redirect examination she said that his talk of marriage had some effect on her mind, and that he had told her on different occasions that he liked her and all those things had some effect on her mind. On recross-examination she said that nothing that he had said was taken into consideration by her at all and had no effect upon her, and on further redirect she answered in the affirmative a leading question that after she had protested she had finally yielded.

Webster defines "seduction" as follows:

"The act of seducing; enticement to wrongdoing; specifically the offense of inducing a woman to consent to unlawful sexual intercourse, by enticements which overcome her scruples; the wrong or crime of persuading a woman to surrender her chastity."

In *Peterson* v. *Crosier*, supra, it is said:

"The word 'seduced,' when applied to the conduct of a man toward a woman, has a defined and well-understood meaning; and a charge that defendant 'seduced, debauched, and carnally knew' plaintiff is tantamount to saying that he used some undue influence, artifice, deceit, fraud, or made some promise to induce the plaintiff to surrender her chastity and virtue to him."

In *People* v. *Smith*, 132 Mich. 58, 61, 92 N. W. 776, 777, "seduction" is defined as:

"The act of persuading or inducing a woman of previous chaste character to depart from the path of virtue by the use of any species of arts, persuasions, or wiles which are calculated to have, and do have, that effect, and result in her ultimately submitting her person to the sexual embraces of the person accused."

For further definitions of the word "seduced" as used in this class of cases, see 4 Words and Phrases, New Series, p. 500, and 7 Words and Phrases, p. 6389.

The record is utterly devoid of evidence of any promise of marriage, or flattery, deception, fraud, or any allurement, or any artifice calculated to lead a female from the path of virtue. To sustain a verdict for damages for seduction more than illicit intercourse must be shown, and illicit intercourse is about all that the evidence as contained in the bill of exceptions now discloses. It was for the purpose of providing a remedy in such cases as this seems to be that the Legislature enacted the bastardy law under which the father of an illegitimate child may be compelled to support his progeny.

The judgment is reversed, and appellant is granted a new trial, with costs of appeal.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.